MURPHY et al. v. NO. 1 WALL STREET CORPORATION et al.

(Supreme Court, Appellate Division, First Department.   February 17, 1911.)

1. DAMAGES (§ 118*)—BUILDING CONTRACTS—DELAY IN PERFORMANCE—CONSTRUCTION.

A building contract required the subcontractors to complete their work within 50 days, and provided that, if they should delay the progress of the work so as to cause loss for which the general contractors should become liable, the subcontractors should reimburse the general contractors for such loss. *Held*, that the subcontractors were not bound to pay all amounts that the general contractors might be called upon to pay by reason of delay in completing the work, but only such loss as the subcontractors themselves caused by their delay.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 287; Dec. Dig. § 118.*]

2. DAMAGES (§ 189*)—ACTIONS—BREACH OF CONTRACT—EVIDENCE.

Where subcontractors were not wholly responsible for loss to the general contractors by failure to complete the building within the time stipulated in the contract, and the evidence does not show how much of the loss was chargeable to the subcontractors because of their delay, there was no basis for estimating damages sustained by the general contractors for the subcontractors' delay in completing their part of the work in an action by them to foreclose a mechanic's lien, in which the general contractors counterclaimed for such damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 512; Dec. Dig. § 189.*]

3. CONTRACTS (§ 232*)—BUILDING CONTRACTS—CONSTRUCTION—WORK CONTEMPLATED.

Where subcontractors knew when they executed the contract that the corner of the building would not form a right angle, so that the corner bricks would have to be beveled, the contract must have contemplated beveling the corner bricks, so that such work could not be charged for as extra work.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071–1097; Dec. Dig. § 232.*]

4. CONTRACTS (§ 198*)—BUILDING CONTRACTS—CONSTRUCTION.

Where a building contract required the subcontractors to furnish labor and materials for the "brickwork from the curb level up, terra cotta, cut granite, fireproof partitions and plastering," the subcontractors were required to erect fireproof tile partitions in the basement as a part of the contract work, the words "from the curb level up" applying only to the brickwork, and were also required to plaster beams in the vault lights in the cellar.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 862–864; Dec. Dig. § 198.*]

Appeal from Trial Term, New York County.

Action by Francis J. Murphy and another against No. 1 Wall Street Corporation and others.   From a judgment for plaintiffs (119 N. Y. Supp. 693), defendants appeal.   Reversed, and new trial granted unless plaintiffs agree to reduce the judgment, in which event judgment as modified is affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and DOWLING, JJ.

Alexander S. Andrews, for appellants.
Thomas P. Keogh, for respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SCOTT, J. This is an appeal from a judgment for plaintiffs in an action to foreclose a mechanic's lien.

The defendants Westlake and McKim were the principal contractors for the erection of a large building known as No. 1 Wall Street, at the corner of Broadway. Plaintiffs were subcontractors for the brickwork from the curb level up, and the terra cotta, cut granite, fireproof partitions and plastering. The controversy, as is not unusual in such cases, relates to claims on the part of plaintiffs for alleged extra work, and counterclaims by defendant for work unperformed and for damages for delay. The plaintiffs' subcontract required that they should complete the whole of their work within "fifty working days," and plaintiffs agreed that:

"If they shall delay the progress of the work so as to cause loss for which the owners shall become liable, then they shall reimburse the owners for such loss."

The "owners" in this subcontract relate to and designate the general contractors. The principal contract between the owners of the building and the defendants Westlake and McKim provided that the building should be completed on January 15, 1907, and that if not so completed said defendants should pay to said owners the sum of $100 per day for each day of overtime. The building was not completed until 115 days after the date set. By some compromise between the owners and the general contractors the amount of damages to be paid was liquidated at $6,800 which the general contractors now seek to recover from plaintiffs. The plaintiffs' obligation was not to pay anything that the general contractors might be obliged to pay, but only such loss as plaintiffs themselves might cause, and, while the evidence tends to show that plaintiffs did unnecessarily delay their work, it does not appear that they were wholly responsible for the loss to which the general contractors were put, nor does it appear how much of said loss was properly chargeable to them. There was therefore no basis upon which to estimate the amount which should be allowed, if any, as damages for plaintiffs' delays.

Among the items of extra work claimed by plaintiffs and allowed by the judgment is one amounting to $974.58 for laying the exposed exterior brick walls with measured one-inch joints. The manner in which these exterior walls were to be laid was specified in the principal contract by reference to another building known as the "Bush Terminal Company's Building." The front walls of this building were laid in what is described as a Flemish bond with irregular joints. Before plaintiffs commenced work, or certainly before they had proceeded far with it, there was some correspondence with the general contractors and the architects as to the manner in which the brick should be laid. At one point in this correspondence it appears to have been contemplated that the brick should be laid with one-inch joints; but this was found to be impracticable, and the final order given to the plaintiffs was to lay the brickwork with regular Flemish bond, and the evidence resulting from an actual examination of the work after completion indicates very clearly that the bed joints were not laid to one inch or to any other exact size, but were irregular varying

above and below one inch precisely as the similar joints varied in the Bush Terminal Building, the agreed model. The evidence does not justify the allowance of this item.

Another item of extra work which is claimed and has been allowed is the sum of $210 for grinding brick to make the corner. The intersection of Wall street and Broadway is not an accurate right angle, and consequently it was necessary to bevel the brick at the corner of the building. To do this plaintiffs had the necessary number of brick ground. It is not apparent upon what theory this item was allowed, or why it should have been considered extra work. Plaintiffs knew when they took the contract that the corner of the building would not form a right angle, and that they could not do their work without beveling the corner bricks, and must be deemed to have included this work in their estimate. One of the plaintiffs testifies that a foreman for the general contractors verbally authorized the grinding of the brick; but it does not appear that this amounted to anything more than an approval of the method of beveling suggested by plaintiffs. This item should have been disallowed.

There are certain items for which the appellants counterclaimed which should have been allowed. The principal of these is a claim for erecting tile partitions in the basement amounting to $635.33. Among the things which plaintiffs agreed to do was to erect fireproof partitions. They refused to erect them in the basement upon the plea that their contract only applied to work above the curb level. This construction is untenable. The contract is to provide materials and perform work "for the brickwork from curb level up, terra cotta, cut granite, fireproof partitions and plastering." The natural reading and meaning of this phrase is that the words "from the curb level up" applied only to the brickwork.

It is also claimed that appellants did not give the requisite notice of their intention to perform the work themselves. The documentary evidence is to the contrary.

The foregoing construction of the contract also disposes of plaintiffs' claim for plastering beams in vault lights in the cellar amounting to $72.87. The appellants probably should have been allowed something for removing plaintiffs' rubbish, but the proofs do not show how much should be so allowed. Plaintiffs' contract does not specifically call for cleaning up, although the duty to remove their own rubbish seems to be conceded. It appears that appellants spent a considerable sum of money for cleaning up and removing rubbish, but it does not appear that all of the rubbish, or how much of it, was that which had been left by plaintiffs.

The judgment appealed from must therefore be reversed, and a new trial granted, with costs to appellants to abide the event, unless plaintiff should stipulate to reduce the judgment by deducting therefrom the sum of $1,892.78, with interest from June 2, 1907, in which case the judgment, as so modified, will be affirmed, without costs to either party. All concur.

127 N.Y.S.—47