### CONFEDERATION OF SWITZERLAND v. COMPANIA DE VAPORES ARAUCO PANAMENA, S. A.

No. A. 16238.

District Court, E. D. New York.

June 5, 1941.

Bigham, Englar, Jones & Houston, of New York City (T. Catesby Jones and F. Herbert Prem, both of New York City, of counsel), for libellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Charles R. Hickox, and Roy T. Parker, both of New York City, of counsel), for respondent.

INCH, District Judge.

The libellant, The Confederation of Switzerland, chartered the steamship "Gloria" owned by the respondent, Compania De Vapores Arauco Panamena, S. A. The charter was entered into January 8, 1941, and was to run for a period of six months, the Gloria was accepted as delivered as of the 8th of January 1941, at noon.

Libellant brings this suit to recover damages because of the alleged unlawful withdrawal, by the respondent, of the "Gloria" from said charter party.

There is no dispute about the facts so far as the issue presented is concerned. Either the respondent had or had not a lawful right to withdraw the "Gloria" from the charter party.

The material portion of the charter contract is as follows:

"1. Owners agree to let, and Charterers agree to hire Steamer for a period of about Six calendar months from the time the Steamer is delivered * * *.

"Steamer accepted as delivered on the 8th of January 1941 at noon.

"5. Charterers to pay as hire: $6.00 (Six Dollars) U. S. Currency per ton deadweight on the guaranteed summer deadweight of 9650 tons per 30 days, commenc-

ing in accordance with Clause 1 until her re-delivery to Owners.

"Payment of hire to be made in cash, in New York without discount, every 30 days, in advance, to Garcia & Diaz, 17 Battery Place, New York, Owners' Agents.

"In default of payment Owners to have the right of withdrawing steamer from the service of Charterers, without noting any protest and without interference of any Court or any other formality whatsoever and without prejudice to any claim Owners may otherwise have on Charterers under this Charter."

Under this contract the "Gloria" had made several trips from New York to Genoa, Italy.

The first payment of charter hire was slightly delayed because of a dispute in respect to furnishing a guarantee. This was satisfactorily adjusted. Thereafter the second payment was due Saturday February 8, and was made on February 7. The third payment was due Saturday March 8, and was made on March 7. The fourth payment was due Tuesday April 8, but no payment or tender of payment was made on or before that date.

The charter expressly required and both parties understood and intended that this fourth payment was required to be paid to the respondent on or before said 8th of April. On Wednesday April 9, libellant tendered a cashier's check of the National City Bank for the amount of the over-due hire. Respondent refused to accept same.

The same day (April 9) respondent sent a wireless to the master of the "Gloria", which was then on the high seas returning to New York, asking whether the "Gloria" was in ballast or not and instructing him not to accept any further orders from the libellant. No immediate reply was received.

The following day (April 10) the respondent duly notified libellant that the "Gloria" was withdrawn "because of failure on the part of libellant to pay the hire as provided by Clause 5 of the Charter". This notice was given about 2:30 in the afternoon.

The "Gloria" arrived in New York, in ballast, on the 15th day of April. By that time, in spite of these notices, libellant had on the dock a quantity of supplies which it intended to load in the "Gloria".

Because libellant claims the "Gloria" had been unlawfully withdrawn from service on April 10, and such loading prevented, this controversy arose.

■ Libellant claims that respondent breached the contract for the reason that the time of payment was not of the essence of the contract and that "unless the nature of a contract is such as to make performance on the exact day agreed upon of vital importance, or the contract in turn provides that it shall be so, failure by promissor to perform his promise on the day stated in the promise does not discharge the duty of the other party". I agree with this statement of the law. Libellant then asserts that a fair reading of this contract and due regard for the circumstances surrounding its making, shows that time of payment of the rent stipulated was not of vital importance nor did the contract in terms provide that it should be so. With this I cannot agree. Libellant finally asserts that respondent did not withdraw the ship promptly but by giving the notice on April 10, it had extended the time of payment, a tender, though rejected, having been made on April 9.

It must be conceded however, that the payment of the monthly installment was due April 8, and not paid when due, aside from any question as to whether a cashier's check is "cash" or the tender thus made was sufficient and should not have been refused.

The respondent, on the other hand, claims that the time of payment was considered essential and vital, that it acted promptly after endeavoring to find out from the master whether the vessel had any cargo on board and that there was nothing done by it by which the rights of the libellant were injured.

■ I think the respondent is correct in stating that its right to withdraw the vessel because of nonpayment of hire when due could not be taken away by the subsequent tender by the libellant of the hire in arrears. Luckenbach v. Pierson, 229 Fed. 130. See, also, Poor on Charter Parties, p. 25.

■ Nor is this a case where a default has been waived by acquiescence on the part of the libellant. The U. S. 219, D.C., 21 F.Supp. 466.

The fact that the tender was made by "check", which had been the previous method of payment, and not by "cash",

is not material, provided, that at the time of the tender the libellant was not in default, Restatement of the Law of Contracts, § 305, pp. 450, 451, but the tender was not rejected because it was in "check" and not "cash". It was rejected because the respondent asserted that libellant was in default. Nothing could make good that default unless the default was waived by some act such as acceptance of the check or some other act showing that the respondent waived the payment of the rent at the later date other than that fixed in the contract between the parties.

The default occurred on April 8. The respondent notified the master of the ship as promptly as possible not to take further orders from libellant. It rejected a tender of the rent in default. The notice of withdrawal followed the next day, April 10. I can see nothing in these acts by respondent that indicate that it waived the default of April 8. There was no payment or tender of the hire on April 8. No excuse is presented why the ample time for payment was not availed of by libellant.

■ Counsel for libellant argues that the guarantee of the National Surety Corporation pursuant to Clause 36 of the Charter, relieved the libellant from compliance with Clause 5, and substituted therefore an obligation by the surety to pay damages sustained by the respondent by reason of any failure of libellant to pay "hire on the due dates". I think the plain requirement of Clause 5, was not weakened or taken away by the fact that respondent obtained from libellant a satisfactory guarantee that libellant would duly perform its contract.

Clause 5, expressly provided that if the hire was not paid 30 days in advance (that is on or before April 8), the payment of hire was in default and respondent was given the right to withdraw the "Gloria" "without noting any protest and without interference of any court or any other formality whatsoever". Thus the respondent did not have to protest at the default nor was it required to give a prior warning. Besides there was nothing to indicate to respondent that the rent would not be paid on or before April 8, 1941, as the payments of February and March had each been paid on the 7th. April 8, was a Tuesday which gave libellant all of Monday and Tuesday to make financial arrangements for the payment of the rent in accordance with the contract aside from the 30 days preceding the due date.

■ The whole issue seems to me to rest upon the correct decision of the question whether strict compliance as to the payment of rental of the "Gloria" was considered by the parties essential in this case and vital in the circumstances. On the law neither counsel has been able to find a similar case in this country. However, there are decisions in the English courts which throw light upon the subject. Tyrer v. Hessler, 1902, 7 Com.Cas. 166. In this case Lord Justice Romer in sustaining the appeal stated—"the contract is perfectly clear, the charterers knew perfectly well that it was their duty to pay the money at the time contracted for, and that if it did not do so the ship owners would have a right to determine the charter party".

Another earlier English case, Nova Scotia v. Sutherland, 5 Com.Cas. 106, relied on by libellant, decided by Justice Bigham, held that a default payment two days late was "punctual" payment but that decision was prior to the Tyrer case which held to the contrary and was criticised in the House of Lords when applied generally and had been followed by the justice in making the decision which was reversed in the Tyrer case. It possibly could be distinguished as counsel for respondent claims, by the fact that in that case cargo had been permitted by the owner to be loaded upon the vessel after the default of payment. Such is not the case before the court.

For the following reason I think the time of payment of rent here was considered and can be found to have been considered by the parties essential and vital.

The charter was entered into the 8th day of January, 1941. At that time, in view of the great war then raging on the other side of the Atlantic with its effect reaching out over the seas of the entire world, the parties to the contract must have been well aware of the constant sinking of merchant ships and the dangers that attended the carrying of cargo on the high seas. It is not unreasonable to impute such knowledge, in such unusual circumstances, to both of the contracting parties. In fact the recitals in the guarantee shows this.

The shipowner was entitled to have its ship and not a check. Ships cannot be built in a day. Consequently, regardless

of the question of ownership of the ship, it seems to me, that at the time of making this contract the sailing of the vessels to ports of other countries had become more and more hazardous as the months passed and that it is not a technicality or unfair that an owner obligated by a charter party to risk its vessel in this manner, aside from any guarantee, should insist on a strict carrying out of a plain contract, carrying with it the possible loss of its vessel. Whether or not this would necessarily be so were times different it is not necessary to decide. I believe it is only fair to both parties in the present circumstances to insist upon the strict compliance with plain conditions, as in the Tyrer case, was found proper, else repossession of the vessel by her owner could lawfully take place.

Moreover it is asserted by respondent that two-thirds of the ownership of the "Gloria" is in Yugoslavia. At the time of the making of the charter party this country was not at war with Italy or Germany but as the months sped by this situation changed and at the time in question on or about April 5, 1941, Italy and Yugoslavia were at war. I agree with counsel for respondent when he states that there cannot be any substantial doubt that if the "Gloria" went as intended to Genoa, Italy, the probability would be that Italy would seize the vessel if something worse did not happen to it should it attempt to cross the ocean to that or any other port.

Thus, if libellant desired to keep possession of the "Gloria", would seem to make strict compliance on its part as to the plain requirement for payment of hire when due, a matter of careful diligence. Yet no excuse is given for its failure to do so except the claim that the contract did not so require.

In an ordinary case, in ordinary times, I have no doubt but that a court might find that the strict compliance with the time of payment required in this case of libellant would require some further evidence of intention and a more liberal construction would be given in the light of such ordinary circumstances. But these are not ordinary times and we are not dealing with an ordinary case. Where the parties should know and did know the great and probable hazards, which even may involve the entire loss or capture of the vessel, they reasonably should be held to have agreed to a strict performance of the contract where there is no ambiguity in the language of the same and where the conditions are plainly set forth. Some of the cases cited by counsel for libellant arose in circumstances which very properly allowed a more liberal construction.

 As there is no dispute but that the "Gloria" was in ballast on April 8, 1941, the withdrawal notice sent by respondent took effect immediately on April 10.

Counsel for libellant argues that because of a claim in the answer for a balance of hire for the two days (April 8 to 10) there is sufficient indication that the respondent waived the default on April 8, but this is directly contrary to its acts already referred to occurring on April 9 and 10 such as the notice to the master, rejection of a tender of the overdue hire and notice of withdrawal.

No affirmative relief is asked for.

I do not think that such allegation in the formal answer of the respondent should be made a basis for finding any such waiver. The right to retake the vessel given by the contract is independent of any right to recover value for its use prior to such lawful retaking.

The libel is dismissed, with costs. Submit findings.