See, also, 252 F.2d 94.

**BARNARD–CURTISS COMPANY, and The Seaboard Surety Company, Surety, Appellants,**

v.

**The UNITED STATES of America, for the Use and Benefit of D. W. FALLS CONSTRUCTION CO.; and Ace Construction Co., Appellees.**

No. 5741.

United States Court of Appeals
Tenth Circuit.

July 1, 1958.

Petitions for Rehearing Denied
July 24, 1958.

Alfred P. Davis, and James L. Tilly,. Denver, Colo. (Tilly & Skelton, Wilbur M. Alter, Denver, Colo., and Arthur H. Lindeman, Minneapolis, Minn., of counsel, were with them on the brief), for appellants.

Owen B. Marron, Albuquerque, N. M. (T. B. Keleher and John B. Tittmann,. Albuquerque, N. M., were with him on the brief), for appellees.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This action under the Miller Act[1] is here for the second time. In the first appeal[2] a judgment in favor of D. W. Falls Construction Company and Ace Construction Company[3] was reversed and the case remanded to the trial court for additional findings of fact. After adopting certain additional findings of fact the trial court again entered judgment for Falls and Ace and dismissed a counterclaim asserted by Barnard-Curtiss Company[4] against Falls. Barnard and its surety appeal from that adverse judgment and contend that the additional findings are without support in the record.

On November 27, 1953, Barnard entered into a contract with the United States to do certain construction and repair work on a federal Bureau of Reclamation irrigation system in New Mexico

---

1. 40 U.S.C.A. §§ 270a–270e.

2. Barnard-Curtiss Company v. United States, 10 Cir., 244 F.2d 565.

3. Hereinafter referred to as Falls and Ace respectively.

4. Hereinafter referred to as Barnard.

known as the Vermejo Project. The contract completion date was June 15, 1955. By agreement, dated January 28, 1954, Barnard subcontracted to Falls certain work on all the major structures of the project.[5] This subcontract required completion on December 31, 1954.

On June 7, 1954, Falls entered into two subcontracts with Ace covering a portion but not all of the work subcontracted by Barnard to Falls.[6] The Ace subcontracts called for completion on December 12, 1954.

Without going into the maze of arrangements which are difficult to ascertain from a thoroughly unsatisfactory record, it appears that Barnard subcontracted to Falls the general excavation, the concrete work, and the backfilling. Barnard retained for itself two general types of work. The first of these concerned only the Willow Creek Wasteway structure and pertained to the excavation for pipe, the laying of pipe, and the backfilling about pipe. This work had to be done *before* Falls could do the work which it was required to do in connection with the Willow Creek Wasteway. The second related to the installation on various structures of certain riprap and gravel bedding for riprap. This could be done only *after* Falls had completed its subcontract. For the performance of this retained work Barnard entered into subcontracts with C. E. Caldwell and with Charles Denton.

Ace and Falls both failed to complete within the time required by their subcontracts. Work was continuing when, on May 17–18, 1955, an unprecedented storm caused a flood which severely damaged the project structures. Barnard re-quested an extension of time on its contract completion date and it was extended to August 31, 1955.[7] Work on the project was completed on October 22, 1955. This was also the date of the completion of the work under the Falls subcontract.

■ Falls sued and recovered judgment for $17,053.76 which represented the balance due on its subcontract plus an item of $1,905.54 for rehabilitation work done by Falls on the Curtis Creek Wasteway structure after the flood. As to this item the court found that there was an agreement between Barnard and Falls whereby Barnard was to pay Falls for this work. The judgment for Falls is sustained by the record.

■ The claim of Ace was for work done after the flood on the Eagle Tail Headworks and the Willow Creek Wasteway which Ace asserted was within the provisions of its contract relating to "Changed Condition." Ace sued for $12,455.27.[8] The trial court held that there was "an implied or constructive contract" obligating Barnard to pay Ace the reasonable value of its services and materials furnished for such work and, after properly eliminating two overhead items which totalled $4,000, gave judgment for Ace in the sum of $8,455.27. While the record as to the arrangements between Barnard and Ace for this work is unsatisfactory and confused, the finding of the trial court in regard thereto is not questioned on this appeal. Under the circumstances the judgment for Ace may not be set aside.

The counterclaim of Barnard against Falls remains to be considered. The basis for this is that Barnard was al-

5. There were eight major structures, viz.: Saltpeter Creek Siphon, Vermejo Canal, Eagle Tail Canal Headworks, Willow Creek Wasteway, Crow Creek Drop, Crow Creek Siphon, Curtis Creek Wasteway, and Curtis Creek Check.

6. The Barnard-Falls subcontract covered 18 items. The two Falls-Ace subcontracts covered a total of 15 items.

7. The extension was requested May 14, 1955, prior to the flood, and was granted because of "overrun in quantities."

8. This was broken down as follows: repairing upper end of Eagle Tail Headworks to condition prior to flood, $774.-14; pumping and cleaning lower end of Eagle Tail Headworks as demanded by Bureau of Reclamation for inspection purposes, $7,800.26; similar work on Willow Creek Wasteway, $3,880.87.

legedly subjected to additional expense because of the failure of Falls to complete its subcontract on the agreed date, December 31, 1954. The counterclaim is in the sum of $15,680.92. This is made up of two major items, $14,285.17 shown due from Falls by Barnard's Exhibit 12 and $1,395.75 which was added thereto without objection at the start of the trial. As to the $1,395.75 item the record is completely devoid of any showing as to what it represents other than the statement of Barnard's attorney that it "was overlooked on our books."

Exhibit 12, and the sketchy explanations thereof, disclosed that Barnard asserted a claim for additional costs in connection with the Willow Creek Wasteway, the Eagle Tail Canal and the Curtis Creek Wasteway. The total amount shown due is $29,662.59. Unexplained credits are allowed to bring the amount down to $14,285.17. As the record stands, the items covered by Exhibit 12 may be placed into three general groups, viz.: costs incurred on account of the flood, costs incurred after December 31, 1954, but not on account of the flood,[9] and expenses on account of the provision of the prime contract for liquidated damages due to failure to complete on time.

In defense of the counterclaim, Falls asserts that it is not liable for additional expense caused by the flood and is not liable for any additional expense so far as the Willow Creek Wasteway is concerned because the delay there was that of Barnard.

The only basis for the counterclaim is the failure of Falls to complete on time. This failure did not ipso facto terminate the contract but subjected Falls to damages for the delay.[10]

The May 17–18 flood was an unprecedented and extraordinary occurrence of unusual proportions and could not reasonably have been foreseen by the parties. The trial court properly found that it was an "Act of God." No recovery may be had from the consequences of the action of natural causes in connection with a breach of contract unless such consequences can be said to have been within the contemplation of the parties at the time of the making of the contract as a probable result of the breach.[11] The damages arising from the flood did not arise in the usual course of things from the failure to complete on time and were not in the contemplation of the parties at the time they made their contract. As they were not foreseeable consequences of the breach, no recovery can be had on account of damages caused by the flood.[12] There was no provision in either the prime or subcontracts relating to the consequences of an occurrence such as the flood. Accordingly, Barnard cannot recover in its counterclaim for any additional expense to which it was put because of the flood.[13]

The findings of the trial court in regard to the Barnard counterclaim are not entirely clear but it appears that the court considered the counterclaim to

9. Ex. 12 covers numerous items which bear a date before that of the flood and other items which cover the whole period January 1 — October 22, 1955.

10. Federal Surety Co. v. A. Bentley & Sons Co., 6 Cir., 51 F.2d 24, 26; Murphy v. No. 1 Wall Street Corporation, 142 App.Div. 835; 127 N.Y.S. 735, 736; 9 Am.Jur. Building Contracts § 48, p. 36; 17 C.J.S. Contracts § 502, p. 1061.

11. 25 C.J.S. Damages § 24, p. 487 and particularly notes 61 and 62. Carnegie, Phipps & Co. Limited v. Holt, 99 Mich. 606, 58 N.W. 623, 624.

12. 15 Am.Jur. Damages § 52, p. 451, note 9 and cases there cited; Restatement of the Law of Contracts, Vol. 1, § 330, p. 509. This follows the rule in Hadley v. Baxendale, 156 Eng.Reprint 145, 5 Eng.Rul.Cas. 502 which has gained general recognition.

13. While additional recovery was allowed to Falls and Ace because of work made necessary by the flood, that recovery was based on specific agreements between Barnard and Falls and Barnard and Ace pertaining to such work.

be based entirely on additional expense caused by the flood. If such be the intended effect of the findings, they are clearly erroneous in this regard. Barnard's Exhibit 12 shows on its face that a number of the claimed items of additional expense were incurred *before* the flood and *after* the December 31, 1954, completion date of the Barnard-Falls subcontract.

After the remand the court found:

"Solely due to delay in performance by defendant of its work required to be furnished before use plaintiffs could perform under their sub-contract, it was impossible for use plaintiffs to have performed the sub-contract prior to the flash flood of May 17, 1955."

On the record presented this finding is clearly erroneous. The only work retained by Barnard which had to be done before Falls and Ace could perform was the pipe work on the Willow Creek Wasteway. This pipe was laid a day or two prior to the flood. There is no claim that Falls and Ace could have completed their work on this structure between the time when the pipe was laid and the flood. As the delay on the Willow Creek Wasteway was due to the failure of Barnard to complete the preliminary work which it was required to do, Barnard is not entitled to recover any damages for delay in connection with that structure.[14]

To the extent that the counterclaim seeks recovery for items not related to the flood or to the Willow Creek Wasteway, Falls is liable for additional expense to Barnard caused by Falls' failure to complete on December 31, 1954. Such liability of Falls may be diminished by two matters of possible applicability.

Barnard requested and obtained from the Bureau of Reclamation an extension of the completion date of the prime contract from June 15, 1955, to August 31, 1955. Also Barnard filed a claim with the Bureau of Reclamation in the amount of $38,335.53 for additional expense. Attached to Barnard's motion for a new trial is an incomplete copy of the decision on this claim. From the record we are unable to ascertain what effect, if any, these two matters have on Barnard's counterclaim.

One matter remains to be considered. Under the prime contract Barnard was obligated to pay liquidated damages, at the amount set forth in the specifications, for failure to complete on the required date. The specifications do not appear in the record. There is no evidence as to what Barnard was required to pay by way of liquidated damages.[15] It may be that this liquidated damage item should be apportioned between Barnard and Falls. We are unable to say one way or the other because of the condition of the record before us.

The judgment for Falls in the sum of $17,053.76 is affirmed. The judgment for Ace in the sum of $8,455.27 is affirmed. The judgment dismissing the counterclaim of Barnard is reversed and the cause is remanded to the trial court with instructions to ascertain, and allow recovery of, the additional expense, if any, to Barnard properly chargeable to Falls because of its failure to complete on December 31, 1954, and not arising from the flood or from any work done on the Willow Creek Wasteway. The trial court shall also ascertain, and allow recovery of, any portion of the liquidated damage delay penalty properly chargeable to Falls. Costs will be assessed against Falls.

14. Cf. United States, for Use of Gillioz v. John Kerns Const. Co., 8 Cir., 140 F. 2d 792, 795 et seq.

15. The trial court found that the liquidated damage penalty for delay assessed against Barnard was $3,900. The basis of this finding is not apparent. Barnard's Exhibit 16 states that Barnard deducted $2,250 from an amount claimed due by Falls as "liquidated damages that the bureau have withheld from us because of your failure to complete your contract by December 31, 1954."