GLEN COVE MARINA, INC., Libellant,

v.

The VESSEL LITTLE JENNIE, etc., and
John F. Donohue, Respondent and
Cross-Claimant.

John F. DONOHUE, Cross-Libellant,

v.

GLEN COVE MARINA, INC.,
Respondent.

No. 64 A. 619.

United States District Court
E. D. New York.

May 2, 1967.

Marshall G. Kaplan, Brooklyn, N. Y., for libellant.

Bigham, Englar, Jones & Houston, New York City, for respondent, John L. Quinlan, New York City, of counsel.

MISHLER, District Judge.

The libellant, a domestic corporation engaged in the business of marine supplies, repairs and storage, seeks the sum of $1,198.40, together with interest and costs, for work, labor, services, parts and storage of the yacht "Little Jennie" between November 27, 1962 and July 18, 1963. John F. Donohue, the owner of the "Little Jennie," cross-libels for $5,400.00, the amount of damages he claims to have suffered as a result of the libellant's failure to complete the repairs to the yacht on or before May 1, 1963.

Mr. Donohue not only is an experienced businessman, but also possesses substantial knowledge of boats and the operation of boatyards. Having noticed that the below-deck portions of the "Little Jennie's" fore and aft masts showed some deterioration, he delivered the yacht on November 27, 1962 to the libellant's boatyard for winter storage and repairs. The court finds that at the time of delivery the parties expressly understood that the repairs would not be undertaken immediately, but rather that they would be undertaken at a time convenient for the libellant. In other words, as Donohue describes the agreement, the repairs were to be performed with "waste labor."

While the masts were promptly removed from the yacht, they were left lying unprotected in the yard. Though Donohue was a frequent visitor, and, on many of those occasions, complained of the failure to start the repairs, the work on the masts was not begun until May 9, 1963. Because the libellant lacked the necessary equipment, however, the masts were not installed, and were simply placed on board the yacht. The "Little Jennie" was finally delivered to Donohue on July 17, 1963.

Although the respondent has questioned the quantity of sanding belts and varnish used by the libellant, no substantial question has been raised regarding the items of work, labor, services and materials, or the reasonableness thereof, as stated in the libel. The court finds that the claimed work, labor and services were actually performed, that the claimed materials were actually supplied, and that the claimed value of these items is reasonable in amount.

The respondent argues, however, that the libellant's failure to complete the repairs on or before May 1st bars any recovery for the value of its services. In addition, Donohue maintains that he is entitled to recover damages for the loss of income from anticipated charter parties.

Donohue asserts that both before and after the yacht was delivered to the libellant, he expressly stated to Smith, the latter's president, that he expected that the repairs would be completed on or before May 1st, and that Smith agreed to that date. Smith, however, denies all the conversations to which Donohue testified. The court finds that Donohue has failed to establish the existence of any such express agreement. Originally, Donohue was content to have the work performed with "waste labor", but as time passed, it became apparent that the repairs might not be completed by May

1st. Eventually, he did insist upon the completion of the repairs by that date.

■■ In effect, Donohue is arguing that full performance of the repairs by May 1st was a condition precedent to his duty to render his promised return performance, i. e., that "time was of the essence" under the contract. The importance of the time element in a contract is always one of degree, and reference must be had to all of the surrounding circumstances. 3A Corbin, Contracts § 713, at 353 (1960). But unless the nature of the contract is such that performance on a specified date is of vital importance, or the contract expressly provides that it shall be so, the promisor's failure to perform on the day stated does not discharge the other party's duty. Confederation of Switz. v. Compania de Vapores Arauco Panamena, S. A., 40 F.Supp. 330, 332 (E.D.N.Y.1941). Furthermore, as a general rule, time is not of the essence in contracts for work and labor. L. Simpson, Contracts § 125 (1954).

■■ Where, as in this case, the parties have failed to set a specific date, it is evident that they did not regard performance at any specific point in time as essential. 1 Corbin, Contracts § 96 (1960). Instead, the promised performance must be tendered within a reasonable time. See City of New York v. New York Cent. R. R., 275 N.Y. 287, 293, 9 N.E.2d 931, 934 (1937); 1A Corbin, supra. In determining what is a "reasonable time" for performance, a court should consider such factors as the relationships between the parties, the subject matter of the contract, and the time that a person of ordinary diligence and prudence would use under similar circumstances. Chicago, R. I. & P. Ry. v. Denver & R. G. R. R., 143 U.S. 596, 609, 12 S.Ct. 479, 483, 36 L.Ed. 277 (1892); Dietrich v. United States Shipping Bd. Emerg. Fleet Corp., 9 F.2d 733, 741–742 (2d Cir. 1925), cert. denied, 278 U.S. 647, 49 S.Ct. 82, 73 L.Ed. 560 (1928).

The libellant suggests several specific factors which might be relevant to the court's determination of what was the reasonable time for performance under this particular contract. First, it has offered testimony that the work could not be performed at temperatures below sixty-five degrees because of the glue used to unite the old and the new parts of the masts, which is most effective when the temperature is at least that high. The respondent, in turn, countered with testimony that temperatures of thirty-five degrees or more are adequate for such purposes. The court need not determine what the proper temperature is, however, since the libellant has failed to show that even under its own version, it had no reasonable opportunity to glue the masts prior to May 9th.

Second, the libellant says that the delay was also caused by inclement weather, and by having to wait for the lumber (fir). Smith testified that the delivery of such lumber takes between four and six weeks. Again, however, the libellant has offered no proof that the delay was actually occasioned by these factors.

At a reasonable time prior to May 1st, Donohue made it clear to the libellant that the completion of the repairs by that date was a material concern of his, and that he intended to offer the yacht for hire on a charter-party after May 1st. In any event, it would be reasonable to infer from the nature of the contract that the parties contemplated that the repairs would be completed by the start of the yachting season. Therefore, in light of all the surrounding circumstances, including a finding that a reasonable estimate of the amount of time required for the actual repairs was about one week, the court finds that under the contract the reasonable time for performance was on or about May 1, 1963. The libellant's failure to complete the repairs by that date, however, was not willful.

■ As a general rule, where a contract for work, labor and services is to be performed within a "reasonable time," time is not of the essence, and if one party desires to rescind the contract because of the other party's delay, he must give the latter notice of his intention to rescind, and a reasonable time in

880

which to tender the promised performance. See Boswell v. United States, 123 F.2d 213, 215 (5th Cir. 1941); 17A C.J.S. Contracts § 422(1). If, however, a party having the privilege to rescind allows the other party to go on performing, making improvements, or otherwise changing his position without some warning that the contract is at an end, the former will continue to be bound under his contract. Farr v. Hain S. S. Co., 121 F.2d 940, 944 (2d Cir. 1941); 3A Corbin, supra, § 754. See also, James Wood Gen. Trading Estab. v. Coe, 297 F.2d 651, 657 (2d Cir. 1961); Peterson Steels, Inc. v. Seidmon, 188 F.2d 193, 195–196 (7th Cir. 1951); Kentucky Natural Gas Corp. v. Indiana Gas & Chem. Corp., 129 F.2d 17, 19–20, 143 A.L.R. 484 (7th Cir.), cert. denied, 317 U.S. 678, 63 S.Ct. 161, 87 L.Ed. 544 (1942).

■ While the fact that a party has waived performance by a certain date, or has been held to be estopped from relying upon the time element, does not in itself give the other party an unlimited extension of time, 3A Corbin, supra, § 722, a contract may still be treated as a subsisting obligation if, as in this case, the party possessing the right to rescind continues to insist upon performance. United States v. Stott, 140 F.2d 941, 944 (8th Cir. 1944). Since Donohue permitted the libellant to commence the repair work after May 1st, it would be unconscionable to prevent the libellant from recovering for its promised performance under the contract.

■ Even though a court finds that a party's delay in performance should not deprive him of his rights under the contract, he may still be required to compensate the other party for damages suffered as a result of the delay. Barnard-Curtiss Co. v. United States, 257 F.2d 565, 568 (10th Cir.), cert. denied, 358 U.S. 906, 79 S.Ct. 230, 3 L.Ed.2d 227 (1958); L. Simpson, supra; 17A C.J.S. Contracts § 506(2) (b). The propriety of a particular disposition should be governed by a consideration of what would be just under the circumstances. 3A Corbin, supra, at 357.

■ In this case, the yacht's owner is well acquainted with the operation of boatyards, and he personally visited the libellant's yard on numerous occasions. Several weeks before May 1st he knew that the repairs would not be completed on time. Indeed, on that date he knew that the work had not even begun, yet he made no attempt to have it done elsewhere. The court finds that under all of the surrounding circumstances, the respondent's conduct was such that it would be unjust to award him damages.

The clerk is directed to enter judgment in favor of the libellant and against the respondent in the sum of $1,198.40, together with interest from July 17, 1963, and dismissing the respondent's cross-libel.

This memorandum of decision constitutes the findings of fact and the conclusions of law required under Rule 52 of the Federal Rules of Civil Procedure.