### LUCKENBACH et al. v. PIERSON et al.

(Circuit Court of Appeals, Second Circuit. December 14, 1915.)

#### No. 16.

SHIPPING ☞52—TIME CHARTER—WITHDRAWAL OF VESSEL BY OWNER.

> The owner of a vessel under a time charter gave notice that he would withdraw her from the charterer at the end of her then voyage for nonpayment of charter hire, as authorized by the charter party. Thereafter the charterer tendered the hire in arrear, but the owner refused to accept the same, and when the vessel had discharged at the end of her voyage took possession of her. *Held* that, while the notice did not effect a withdrawal, because the vessel was then on a voyage, not having waived the same by accepting payment, the owner was within his rights in withdrawing her when she had discharged.

> [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 211–213; Dec. Dig. ☞52.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Edgar F. Luckenbach and another, as executors of the will of Lewis Luckenbach, deceased, against Ralph Pierson and others. From a decree holding the owner's withdrawal of a steamer under a time charter wrongful, libelants appeal. Modified and affirmed.

Peter S. Carter, of New York City, for appellants.

Convers & Kirlin, of New York City (John M. Woolsey, of New York City, of counsel), for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. November 9, 1905, Lewis Luckenbach chartered the steamer Harry Luckenbach to Ralph Pierson & Co. under a time charter, government form, for a term of 10 calendar months. The steamer was delivered January 27, 1906. The material provisions of the charter party are:

"(4) That the charterers shall pay for the use and hire of the said vessel fifty-five hundred (5,500) dollars per calendar month, commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part of a month; hire to continue until her delivery in like good order and condition to the owners (unless lost) at New York or Baltimore, Md."

"(6) Payment of the said hire to be made in cash, semimonthly, in advance, or as agreed, and in default of such payment the owners shall have the faculty

of withdrawing the said steamer from the service of the charterers without prejudice to any claim they (the owners) may otherwise have on the charterers, in pursuance of this charter."

"(22) Steamer to work night and day if required by charterers, and all steam winches to be at charterers' disposal during loading and discharging, and charterers to provide men to work same both day and night as required, charterers agreeing to pay all expenses."

Charter hire due June 11, 1906, for one-half month in advance, being in arrear, Luckenbach wrote Pierson as follows:

"New York, June 27, 1906.

\* \* \* \* \* \* \* \* \* \*

"Gentlemen: If I do not receive a check for $2,750 for hire of the steamer Harry Luckenbach, from June 11th to June 27th, due June 11th, and $2,750 for the hire of said steamer from June 27th to July 11th, by four o'clock this afternoon, I will withdraw said steamer from your service as per clause #6 of charter party dated New York, November 9, 1905.

"Yours truly, Lewis Luckenbach.

"P. S.—As already advised, I will charge you 6% interest on money not paid the day it was due."

At this date the steamer was loading a cargo of coal at Baltimore to be delivered at Frenchman's Bay, Me., for which port she sailed June 29th.

June 30th Luckenbach wrote again as follows:

"New York, June 30, 1906.

\* \* \* \* \* \* \* \* \* \*

"Gentlemen: S/S 'Harry Luckenbach.' Please take notice that the master of above steamer sailed from Lambert's Point for Frenchman's Bay, with a cargo of coal, without signing bills of lading, owing to Messrs. Castner, Curran & Bullitt not allowing the master to insert a clause, whereby we would be protected in our claim for freight. We are willing to sign bills of lading upon receipt of charter hire for which you are in arrears.

"Yours very truly, Lewis Luckenbach, per Potter.

"We shall withdraw steamer soon as present trip is completed as per ours of 27th inst."

July 5th Pierson & Co., replied to these letters as follows:

"New York, July 5, 1906.

"Dear Sir: Your favors June 27th and 30th received; contents noted. We cannot understand your determination to withdraw this steamer from charter dated New York, November 9, 1905, inasmuch as your hire money is guaranteed by the deposit of Pennsylvania Railroad stock in the German-American Bank to joint account. We beg to inclose our certified check, value fifty-five hundred ($5,500) dollars, in settlement of hire to July 12th, also our bill for commission on same, amounting to one hundred thirty-seven dollars, fifty($137.50) cents, from which you will note we have deducted interest at the rate of 6% on the hire's due as per agreement. Kindly receipt inclosed bills, and return to us in due course.

"Yours very truly."

July 6th Luckenbach replied:

"New York, July 6, 1906.

"Gentlemen: If you are willing to pay me $5,500.00, I will apply same to cover the defaulted charter hire of the steamer Harry Luckenbach. But in accepting same it does not, in any way, reinstate said steamer under charter party heretofore canceled. This vessel is open for charter. If you have any freights to offer, I will be pleased to hear from you.

"Yours very truly."

July 12th Pierson & Co. wrote:

"New York, July 12, 1906.

"Dear Sir: We herewith inclose * * * certified check for charter hire of the steamer Harry Luckenbach, pursuant to charter of date November 9, 1905, for the coming two weeks, also our bill for commission, and desire to say we still hold for your call the certified check $5,500 heretofore tendered you.

"Respectfully yours."

July 2d the steamer arrived at Frenchman's Bay and the cargo having been discharged July 16th Luckenbach ordered her back to New York, where she arrived on the 18th.

The District Judge held that there was only a threat to withdraw the vessel, not carried out until cargo was discharged at Frenchman's Bay, before which time Pierson & Co. having tendered all hire in arrear, the withdrawal was wrongful. The decree appealed from awarded to the libelants, executors of Luckenbach, charter hire to July 16th, less certain admitted deductions and to Pierson & Co. the damages sustained by them as the result of the wrongful withdrawal.

The act of Luckenbach is frequently referred to throughout the case as an attempt to cancel or rescind the charter party. This hardly fits the situation. One who wishes to cancel or rescind a contract can and should do so presently. But the withdrawal of a vessel from a charter party means that the owner shall deprive the charterer of any further enjoyment or use of the vessel and take it into his own exclusive possession. This can be presently done, even where the vessel is at sea, provided she is light; but if there be any cargo on board no withdrawal can be made until the cargo be relanded if the vessel is at the loading port, or until it be discharged if she is at sea or at destination. In the present case, when Luckenbach notified Pierson & Co. that he would withdraw the vessel on June 27th if the hire in arrear were not then paid, she was loading at Baltimore and he could have done so by relanding the cargo. As he did not, but allowed her to proceed on her voyage, a proceeding entirely inconsistent with a then withdrawal, the notice of that date was ineffectual; but June 30th he gave notice that he would withdraw the vessel at the end of her trip. He could not actually do so until her cargo was discharged July 16th. If in the meantime he had accepted payment of the charter hire in arrear, he would have waived this notice. But he refused the tender then made, without objecting to its character or amount, and consistently and persistently maintained that he had exercised his privilege to withdraw the vessel. The charterer could not deprive him of his right to do so by any tender of the hire in arrear, nor can the court alter the contract made by the parties.

The case particularly relied upon by the charterer, Owners of Steamer Langford v. Canadian Forwarding & Exporting Co., 10 Asp. Mar. Cas. N. S. 414, differs in a most material particular, viz., that before the discharge of the cargo the owners had accepted all hire overdue, so that then there was no default and they had no right to withdraw the vessel. Sir Arthur Wilson, delivering the opinion of the Privy Council, said:

"Their Lordships think it clear that there was no withdrawal of the steamer until that effected by the master on the 4th of October. And on that date there was nothing to justify a withdrawal; for there was nothing in arrear, the full hire for the month ending the 11th October having been paid and received."

As we hold that the withdrawal of July 16th, in pursuance of the notice of June 30th, was rightful, the owner is entitled to hire down to that date, and other questions discussed need not be considered. The allowance of damages to the charterer must be stricken out, and the decree, so modified, is affirmed, with interest and costs.