**AMERICAN RIVER LINES, INC., Plaintiff,**

v.

**CENTRAL SOYA COMPANY, INC., in personam, and the Barges ARL 105, ARL 109B and ARL 110B, in rem, Defendants.**

No. GC 80–172–WK–O.

United States District Court, N. D. Mississippi, Greenville Division.

Oct. 8, 1981.

Lawrence Wade, Greenville, Miss., for plaintiff.

J. Robertshaw, Greenville, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

In this admiralty action, plaintiff American River Lines, Inc., (ARL) seeks recovery of three barges from defendant Central Soya Company (CSY), the bare-boat charterer. The dispute concerns the right of ARL to withdraw the barges from a charter party after late tender of charter hire by CSY. On the facts set forth below, the court addresses CSY's motion for summary judgment.

### A. THE FACTS

In 1970 and 1972, charter agreements were made between ARL and CSY whereby CSY leased three barges with hire to be paid "monthly in advance." After the original charter period, the agreements provide for continuance "on a biennial basis unless Charterer [CSY] gives 90 days prior notice of cancellation." Neither lease provides for forfeiture for nonpayment of charter hire nor specifies that time is of the essence. From the inception of the agreements, CSY has sent by regular mail all payments of hire from its place of business at Fort Wayne, Indiana, to ARL at Greenville, Mississippi. On seven occasions checks for payment were mailed on or after the first day of the month and accepted by ARL without objection.

On April 24, 1980, CSY issued a check in payment of the May charter hire. An error had been made in programming a recently utilized computer, however, and the check was mistakenly sent to American River Transportation, a different firm. CSY discovered the error on April 30, and on that day issued and mailed its remittance to ARL. In May 1980, CSY's employees mistakenly placed the invoice for the June payment in the paid invoice file and hence

failed to remit. On June 5, 1980, ARL wrote CSY a letter stating that it expected all future payments to be timely or the charter would be terminated.[1] Failure to receive the payment for June was not mentioned and the error remained undiscovered, CSY apparently believing that the letter referred to the May charter hire. Upon receiving the invoice for the month of July, which also failed to mention nonreceipt of the June payment, CSY mailed a check to ARL on June 23 for the July charter hire. ARL returned this check on June 26, however, stating that it would not accept partial payment of the past due balance.

When CSY received this letter on July 1, it investigated and discovered the omission concerning the payment for June. Checks for both the June and July hire were mailed that same day. Having not yet received payment, on July 2, ARL telegraphed CSY to terminate the charters. CSY refused to recognize the validity of the withdrawal and refused to return the barges. When the two checks were received by ARL on July 3, it declined to accept them and filed this suit on August 7, 1980, CSY has since tendered timely payments and they have been returned by ARL.

### B. LEGAL ANALYSIS

CSY proffers two theories on which it seeks summary judgment: First, that ARL's letter of June 5 did not give sufficient notice of an intent to withdraw the barges from the charter; second, that the default was cured by mailing payment before ARL attempted withdrawal. For reasons set forth below, we find that CSY must prevail on its second theory. Since our ruling rests upon undisputed material facts, we find it unnecessary to consider the sufficiency of the June 5 notice upon which defendant bases its first theory.

---

1. The letter provided in pertinent part:

This notice is being given at this time due to the fact that you have within the recent past failed to promptly pay your obligations under these charters. This letter is to serve notice upon you that from this date forward, American River Lines, Inc. expects timely payments on each barge, and if the same is not forthcoming, the charters will be terminated.

■ We recognize at the outset that this is an admiralty action within the meaning of Rule 9(h), F.R.Civ.P., and that we have subject matter jurisdiction pursuant to 28 U.S.C. § 1333. It is well settled that a dispute arising out of a charter party of a vessel in service is within the admiralty jurisdiction. *E. g., Jack Neilson, Inc. v. Tug Peggy*, 428 F.2d 54 (5 Cir. 1970). Furthermore, that only equitable remedies may be sought does not deprive the court of its admiralty jurisdiction since it is now recognized that admiralty courts may issue equitable relief. *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 640 F.2d 560, 565 n.3 (5 Cir. 1981); *Pino v. Protection Marine Ins. Co.*, 599 F.2d 10 (1 Cir. 1979). Thus, federal maritime law clearly governs this action, and it is of no significance that diversity of citizenship between the parties may exist.

■ The owner of a vessel may properly refuse to accept a late tender of charter hire *after* he has given notice of withdrawal. *Luckenbach v. Pierson*, 229 F. 130, 132 (2 Cir. 1915). If the owner accepts a late tender, however, he waives his right of withdrawal unless the charter so provides or he has expressly reserved his right to withdraw. *In the Matter of Marcona Carriers, Ltd.*, 1974 A.M.C. 1053, 1057 (N.Y.Arb. 1974). The acceptance of payment cures the default, thus the circumstances which created the right to withdraw no longer exist. *See* 2B Benedict on Admiralty § 6, at 1–54 (7th ed. 1980). Likewise, even though a late tender of payment is rejected, it is sufficient to bar withdrawal if the tender is made before notice of withdrawal is given. *In the Matter of Amerada Hess Shipping Corp. (M.T. Noto)*, S.M.A. No. 1032 (N.Y.Arb.1976); *Empresa Cubana de Fletes v. Lagonisi Shipping Co. (The Georgios C)* [1971] 1 Lloyd's List L.R. 7 (C.A.); Benedict, *supra* at 1–55. The rule that a late tender of payment will prevent a forfeiture is also ingrained in the common law. *Kann v. King*, 204 U.S. 43, 54–55, 27 S.Ct. 213, 216, 51 L.Ed. 360, 365 (1907); *Monsanto Co. v. Cochran*, 254 Miss. 399, 180 So.2d 624, 629 (1965).

Where the lease contains a condition that the lessor may re-enter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay rent at the time specified, it is well settled that a court of equity will relieve the lessee and set aside the forfeiture incurred by his breach of the condition whether the lessor has or has not entered and dispossessed the tenant. *This rule is based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money.* (Emphasis ours).

1 Pomeroy, Equity Jurisprudence § 453 (4th ed. 1918); *Monsanto Co., supra*, at 629. We apply this principle here.

■ Having concluded that a late tender of charter hire prior to notice of withdrawal cures the delinquency and bars withdrawal, we must now determine whether the mailing of payment on July 1, 1980, was sufficient to constitute tender of payment prior to the July 2 notice of withdrawal. It is firmly established that payment may be made by mail when by the usual course of dealing, the creditor has assented to payment in that manner. *A/S Tankexpress v. Compagnie Financiere Belge Des Petroles S/A*, [1948] 82 Lloyd's List L.R. 43 (H.L.); 60 Am.Jur.2d *Payment* § 17 (1972); see The Spyros Lemos, 1967 A.M.C. 2357 (N.Y.Arb.1967). If payment by mail is permitted, "payment is made when a letter containing the remittance, properly addressed and with postage prepaid, is deposited in the mail." 60 Am.Jur.2d *Payment* § 11 (1972). ARL clearly assented to the payment of charter hire by mail, since all payments under the charter have been made in that manner. Therefore the tender of payment by CSY was effective on July 1, the date on which the checks were undisputedly placed in the mail at Fort Wayne. This tender preceded ARL's notice of withdrawal, which was not consummated until July 2. Hence, we hold that the default was cured July 1 and the withdrawal notice of July 2 could have no effect. Defendant's motion for summary judgment must be sustained.

Let judgment issue accordingly.