**YUKON RECOVERY, L.L.C.,**
**Plaintiff–Appellant,**

v.

**CERTAIN ABANDONED PROPERTY,**
**in rem, Defendant,**

Ocean Mar, Inc., Claimant–Appellee.

No. 98–36015.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1999.

Filed March 7, 2000.

David Bederman, Gambrell Hall, Emory University, Atlanta, Georgia, for the plaintiff-appellant.

John A. Treptow, Dorsey & Whitney LLP, Anchorage, Alaska, for the claimant-appellee.

Richard Robol, Columbus, Ohio, for the amicus.

Before: REAVLEY,[1] REINHARDT and McKEOWN, Circuit Judges.

REAVLEY, Circuit Judge:

This is a contest for salvage rights to gold cargo in a shipwreck lying for a century on the bottom of the inland passage near Juneau. Yukon Recovery, L.L.C. (Yukon) appeals the judgment in favor of Ocean Mar, Inc. (Ocean Mar) granting rights to salvage the SS Islander. Yukon asserts that the district court applied the wrong standard of proof, erred in its ruling on abandonment, and erred in granting exclusive salvage rights to Ocean Mar. We affirm.

## HISTORY OF THE CASE

The following facts are undisputed. The Islander sank in 1901 near Juneau en route from Skagway, Alaska to Vancouver, British Columbia. The Islander routinely carried Royal Canadian mail along with cargo and passengers. Many attempts to salvage the Islander were unsuccessful because the technology required to conduct salvage operations at that depth and water temperature did not exist at that time. Despite the lack of technological sophistication, an ingenious salvage effort by the salvage company called the Curtis/Wiley Group raised approximately two-thirds of the hull in 1934; however, 60 feet of the forward section had broken from the vessel and remained on the ocean floor. Ocean Mar determined the location of the

wreck during expeditions to the site in 1993 and 1994 and executed a salvage contract in 1995 with Marine Insurance Company ("MIC") for salvage of any gold insured by MIC recovered from the site. In 1996 Yukon mounted an expedition to the site of the wreck and recovered a 1930's whiskey bottle and a light fixture from the area.

Yukon filed an *in rem* action seeking arrest of the artifacts, title to vessel and cargo at the wreckage site, exclusive rights as salvor of the wreckage site and injunctive relief against competing salvors. Ocean Mar, having obtained its salvage contract from MIC, was en route to conduct salvage activities at the site in 1996 when it was notified of a temporary restraining order obtained by Yukon. Ocean Mar appeared in the action brought by Yukon and filed a separate action seeking exclusive salvage rights. After consolidation of the cases, the district court held a bench trial on the merits, and entered findings of fact and conclusions of law.

The district court found the following facts by a preponderance of the evidence. The Islander sank with a large shipment of gold owned by the Canadian Bank of Commerce (CBC) sent by registered mail. MIC insured the gold and paid a claim entitling MIC to subrogation rights in the gold. The gold shipment was contained in a forward section of the vessel and therefore remained on the ocean floor after the 1934 salvage. Theodore Jaynes, the owner of Ocean Mar, carried out extensive research into the Islander and her cargo starting in 1989. Robert Mester, the owner of Yukon, conducted far less primary research and gathered information largely from other researchers. Mester acquired portions of Ocean Mar's proprietary funding proposal, which increased the urgency of his efforts to mount a competing salvage effort. Ocean Mar has all the financial and professional resources required to salvage the remaining cargo of the Islander. Neither Yukon nor Ocean Mar has ob-

1. The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation.

tained or retained actual, continuous and exclusive possession or occupancy of the wreckage site of the Islander or the surface of the water above the site.

The district court concluded that Ocean Mar was the first in modern times to find, observe, record and make a timely claim for the wreckage of the Islander. Arrest of the light fixture did not entitle Yukon to any priority over a contract salvor. Because competition would endanger lives, equipment, and artifacts, it is unsafe and technically unfeasible for two salvors to simultaneously work the wreckage site. Because it conducted thorough historical investigation and was the first in recent times to locate the wreckage of the Islander, Ocean Mar is entitled to exclusive salvage rights, even absent actual possession or physical presence at the site. The district court concluded that MIC has not abandoned its rights in the gold and Ocean Mar is entitled to perform its salvage contract for the gold cargo owned by MIC.

The district court dismissed Yukon's petition, granted Ocean Mar exclusive rights to salvage the Islander, and enjoined Yukon from exploring or conducting salvage operations at the Islander site. The district court ordered Ocean Mar to submit a salvage plan, keep detailed records of all property raised at the wreckage site and sequester all gold and other property raised for the determination of ownership rights under the court's continuing jurisdiction over the case.

## POINTS OF APPEAL[1]

■ Yukon asserts that the district court should have applied a clear and convincing standard of proof to the determination of MIC's rights in the cargo, and that the evidence conclusively establishes that MIC abandoned any interest it held in the cargo. Yukon further argues that its *in rem* arrest of artifacts from the wreck site requires the district court to grant it exclusive rights as salvor in possession. Alternatively, Yukon asserts that the district court should have granted it access to the wreck as co-salvor.

## PROOF OF MIC'S OWNERSHIP

The district court held that, absent abandonment, MIC is the owner of the Islander's gold. It reached this conclusion by finding that MIC had insured the gold and paid the insurance claim, entitling it to subrogation rights in the gold. Yukon argues that the district court's finding of fact is clearly erroneous because the court evaluated the evidence under the wrong burden of proof.

■ We reject Yukon's challenge to the burden of proof employed by the district court, because both Yukon and Ocean Mar agreed below that the question of the ownership of the gold was governed by the standard the district court employed. Before the district court, Yukon sought a finding of fact on this issue under the preponderance-of-the-evidence standard. On appeal, however, Yukon for the first time asserts that MIC's subrogation rights must be proved by clear and convincing evidence. Yukon argues that the law of Alaska requires clear and convincing evidence in the absence of documentary proof of an insurance policy and payment of a claim. Alternatively, Yukon also argues that it is entitled to invoke the English law of marine insurance which requires proof by a heightened evidentiary standard. We need not address Yukon's arguments regarding choice of law, however, because it may not now argue against the preponderance-of-the-evidence standard that it asked

---

1. Yukon has filed a motion to strike Ocean Mar's brief on the grounds of lapse of corporate status for failure to pay Delaware franchise taxes. Ocean Mar responds with a request to take judicial notice of its reinstatement. The capacity of a corporation to sue and be sued is determined according to the laws of the jurisdiction where the corporation is organized. Fed.R.Civ.P. 17(b). De-

laware law provides an automatic three year extension of corporate existence for the purpose of prosecuting or defending any lawsuit begun prior to or within three years after corporate dissolution. *See City Investing Co. Liquidating Trust v. Continental Cas. Co.,* 624 A.2d 1191, 1195 (Del.1993) (citing 8 Del. C. § 278). The motion to strike is denied.

the district court to apply at trial. If the district court erred (and we do not suggest that it did), the error was invited.

■ Putting aside its untimely argument, Yukon has not challenged the sufficiency of the evidence to support the district court's subrogation finding under the standard of proof applied at trial. Review of the record demonstrates that there is sufficient evidence to support the district court's finding as to MIC's subrogation rights in the Islander cargo under the preponderance-of-the-evidence standard, and that the finding is not clearly erroneous.

## PROOF OF ABANDONMENT[2]

■ Yukon argues that two pieces of evidence conclusively demonstrate that MIC abandoned any interest it may have in the cargo of the Islander. Yukon argues that MIC's failure to file a claim in the 1901 admiralty limitation of liability proceeding brought by Canadian Pacific Navigation Company conclusively establishes that MIC abandoned its interest in the cargo. The district court found that it was not unusual that MIC declined to file a claim, which was supported by testimony from an expert witness on insurance practices. This conclusion is not unreasonable given that the limitation fund included only the value of the Islander's lifeboats and a small amount of freight due on the voyage. The only preclusive effect of failure to file a claim in the limitation proceeding is that it bars recovery from CPNC, which is not the equivalent of abandonment of title to lost property.

■ Neither of these parties claim any connection with the 1934 salvage operation by Curtis/Wiley, but Yukon claims that this operation conclusively establishes MIC's abandonment of any claim to the cargo. First, Yukon argues that because the salvage was partially successful, the district court erred in ruling that the technology to salvage the Islander did not exist until very recently. Because the district court relied on the lack of technology as a factor in its determination that MIC's inaction did not constitute abandonment, Yukon argues that the 1934 salvage proves that the district court should not have relied on the absence of technology as a factor.

■ The 1934 salvage effort failed to bring up the section of the ship containing the mail gold storage hold because the bow of the ship had broken free from the remainder of the hull. There is nothing to suggest that the extremely primitive, although ingenious, technology utilized in the 1934 salvage was a viable method for recovering the forward section of the Islander; therefore the failure to attempt a second salvage with the same technology does not constitute evidence of abandonment of the cargo in the forward holds. Both Yukon and Ocean Mar used the most modern sonar and remote diving technology to locate and explore the remaining wreckage field and Yukon cannot reasonably contend that the same results could have been accomplished with the technology available in the 1930's. It is only by virtue of modern technological advances that the current salvage attempt is within the realm of possibility. The district court properly acknowledged that lack of technology is one factor to consider in determining whether inaction constitutes abandonment. See *Deep Sea Research, Inc. v. The Brother Jonathan.*[3]

■ Yukon proceeds with an entirely different tack to argue that failure to ob-

---

**2.** Admiralty salvage cases occasionally employ the term "abandonment" for two distinct meanings. One meaning is the same as "derelict" which refers to circumstances where the master or owner is no longer in physical possession of the vessel. Title to a derelict vessel is held by the owner unless its title has been "abandoned" according to the second meaning of this term, which renders the ves-

sel subject to the law of finds rather than salvage. For the sake of clarity, the term "abandonment" is used here only to refer to property in which title has been abandoned.

**3.** 102 F.3d 379, 388 (9th Cir.1996) (Aff'd in part, vacated in part *California v. Deep Sea Research,* 523 U.S. 491, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998)).

ject to the 1934 salvage is direct evidence of abandonment because MIC should have asserted its rights during the commencement of the salvage. The problem with this argument is that MIC was not required to object to the 1934 salvage in order to preserve its claim to the cargo. Salvage law grants the salvor only a superior right of possession to recovered property, and not title, until a court has passed on title and a salvage award. *See Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel (Treasure Salvors III);*[4] *Hener v. United States.*[5] The 1934 salvor failed to raise the mail gold, and title to the gold was not then at issue.

The district court heard substantial testimony, reviewed copious exhibits, and determined from all the facts and circumstances that MIC had not abandoned its rights in the gold. Neither the limitation proceeding nor the 1934 salvage constitute conclusive evidence to the contrary. The district court applied a preponderance of the evidence standard to the question of abandonment, and the sufficiency of the evidence to support the district court's determination has not been directly challenged in this appeal.

EXCLUSIVE SALVAGE RIGHTS

Yukon contends that the district court erred in granting exclusive salvage rights to Ocean Mar and not to Yukon. Yukon argues that the Islander is abandoned property and therefore the salvage contract between Ocean Mar and MIC is ineffective to confer priority on Ocean Mar. Yukon further argues that it is entitled to priority because it was the first to file an *in rem* proceeding and present artifacts from the wreck site for arrest. Because

the presentation of artifacts is merely a jurisdictional mechanism, Yukon is mistaken in its assertion that being first to arrive at the courthouse confers priority rights as a salvor.

■ The premise of Yukon's first argument is untenable because the district court's finding regarding abandonment is undisturbed on appeal. Even if the premise were correct and the cargo had been abandoned, Yukon's claim to priority does not flow automatically by virtue of its filing for *in rem* arrest. Filing an *in rem* arrest of recovered items merely confers *in rem* jurisdiction in the district court over the recovered property. *See Martha's Vineyard Scuba Headquarters, Inc. v. The Unidentified, Wrecked and Abandoned Steam Vessel.*[6] Filing an *in rem* petition for arrest of artifacts does not automatically confer exclusive rights to a site as salvor in possession. *See MDM Salvage, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessel;*[7] *See also Indian River Recovery Co. v. The China;*[8] *Marex Titanic, Inc. v. Wrecked and Abandoned Vessel, RMS TITANIC.*[9] Because an *in rem* complaint and admiralty arrest of recovered artifacts merely confer jurisdiction in the district court, and do not automatically create exclusive salvage rights, Yukon's basis for claiming salvor in possession status fails.

■ Yukon further challenges the award of exclusive salvage rights to Ocean Mar. Courts frequently use actual or constructive possession of the wreck site as grounds for a grant of exclusive salvage rights. *See Treasure Salvors III,* 640 F.2d at 572; *Hener,* 525 F.Supp. at 357; *Cobb Coin Co., Inc. v. The Unidentified, Wrecked and Abandoned Sailing Vessel.*[10]

4. 640 F.2d 560, 567 (5th Cir.1981).

5. 525 F.Supp. 350, 357 (S.D.N.Y.1981).

6. 833 F.2d 1059, 1062 (1st Cir.1987).

7. 631 F.Supp. 308, 312 (S.D.Fla.1986).

8. 645 F.Supp. 141 (D.Del.1986) (first to file *in rem* complaint enjoined from salvage activities).

9. 805 F.Supp. 375, 377 (E.D.Va.1992) (exclusive salvage claims between first to file and intervenor requires trial on the merits.) (rev'd on other grounds, 2 F.3d 544 (4th Cir.1993)).

10. 525 F.Supp. 186, 195 (S.D.Fla.1981).

To maintain an exclusive franchise, the salvor must undertake ongoing salvage operations with due diligence which are clothed with some prospect of success. *Martha's Vineyard*, 833 F.2d at 1061. The district court found that Ocean Mar had all the resources necessary to successfully salvage the remaining cargo of the Islander; however, because the district court found that neither Yukon nor Ocean Mar had obtained actual, continuous and exclusive possession or occupancy of the wreckage site of the Islander or the surface of the water above the site, possession cannot be utilized to determine exclusive salvage rights.

The failure of the parties to engage in ongoing salvage operations is understandable in light of the changes in salvage law wrought by the Abandoned Shipwreck Act (ASA).[11] Apart from this change, salvage law encourages salvors to undertake risks to rescue imperiled maritime property through generous salvage awards by admiralty courts. *Treasure Salvors III*, 640 F.2d at 567. The expenditures required to establish constructive possession and ongoing salvage operations for sunken ships were justified by the prospect of a grant of exclusive salvage rights and a liberal award from any salvaged property. Therefore courts could expect that salvors would establish occupancy and engage in ongoing salvage prior to the institution of legal proceedings.

Under the ASA, however, salvors seeking to raise long lost wrecks in state waters can no longer engage in ongoing salvage operations with confident expectations of a liberal salvage award to compensate them for the investment. Under the ASA, the United States asserts title to all abandoned shipwrecks that are embedded in the submerged lands of a state, embedded in the coralline formations protected by a state on submerged lands of a state, or on sub-merged lands of a state and either included or eligible for inclusion in the national register.[12] The ASA transfers title in all such shipwrecks to the state in or on the land of which the shipwreck is located.[13] The laws of salvage and finds do not apply to shipwrecks subject to § 2105 of the ASA.[14]

 The ASA creates uncertainty when a salvor cannot determine in advance whether a wreck is "abandoned" or "embedded" and therefore subject to the ASA and questions of fact to be decided by the court. A salvor could expend immense resources to locate, survey and salvage a wreck only to have the court later rule that the salvor is entitled to nothing because the ASA displaces the law of salvage. Both of the parties to this litigation have expended significant resources to locate the Islander but prudently avoided costly salvage operations which could have resulted in a total loss under the ASA. Because neither party established occupancy and ongoing salvage operations, we must look to other factors for the determination of exclusive salvage rights.

 The grant of exclusive salvage rights is subject to equitable considerations. *See Treasure Salvors III*, 640 F.2d at 573 ("equitable considerations come into play in determining the legal protection afforded a finder."); *Hener*, 525 F.Supp. at 358 (admiralty courts may be flexible in determining whether a salvor has commenced an operation worthy of protection.); *See also R.M.S. Titanic, Inc. v. The Wrecked and Abandoned Vessel.*[15] In addition to occupancy and prospects of success, courts have looked to a variety of other equitable factors to analyze competing salvage claims. For example, courts consider whether the salvor has conducted independent historical research on the vessel and has acted in good faith. *See Deep Sea Research, Inc. v. The Brother Jona-*

---

11. 43 U.S.C. § 2101, et seq.

12. 43 U.S.C. § 2105(a).

13. 43 U.S.C. § 2105(d).

14. 43 U.S.C. § 2106(a).

15. 924 F.Supp. 714, 720 (E.D.Va.1996).

*than.*[16] Courts also grant exclusive rights to the first finder over subsequent finders.[17] *See Martha's Vineyard,* 833 F.2d at 1065; *The China,* 645 F.Supp. at 144; *Deep Sea Research,* 883 F.Supp. at 1361 (first finder of lost wreck may acquire exclusive rights to salvage).

■ The district court made several specific findings that support its decision to grant Ocean Mar exclusive salvage rights. The district court found that Ocean Mar was the first in modern times to find and claim the wreckage of the Islander. The district court also found that Ocean Mar's research into the history of the Islander was by far more thorough than Yukon's. The district court also found that Yukon's acquisition of Ocean Mar's proprietary information concerning the estimated value of the gold cargo influenced Yukon's attempt to mount a competing salvage operation. All of these findings are supported by evidence in the record and support the district court's decision to award exclusive salvage rights to Ocean Mar.

The district court also concluded that Ocean Mar was entitled to priority by virtue of its status as a contract salvor. Yukon contends that the district court erred in conferring priority on the basis of contract salvor status. We find little direct authority on this point; however, the precedents that exist suggest that a contract salvor may be granted priority over a volunteer salvor. *See* Vol. 3A, M. Norris *Benedict On Admiralty: The Law of Salvage,* § 152 (7th Ed. rev.1997); *See Quantity of Iron.*[18] We also note authority for the proposition that an owner may reject salvage by a volunteer. *See Platoro Ltd., Inc. v. Unidentified Remains Of A Vessel.*[19] It is reasonable that the law should support the right of an owner to select a salvor for shipwrecked property rather than be subjected to a salvage award granted to a volunteer. The district court properly granted priority to Ocean Mar by virtue of its equitable claim as first finder and its salvage contract.

CO–SALVOR STATUS

■ Yukon argues that the district court should have granted it rights as co-salvor of the Islander. As indicated above, the first finder is entitled to exclusive salvage rights so long as it engages in diligent efforts clothed in some prospect of successful salvage. Ocean Mar, as first finder, is entitled to this protection and Yukon has not presented any compelling reason for departing from the rule. In addition, the district court specifically found that co-salvage would endanger lives, valuable equipment, and artifacts from the site because it would create competition to recover the gold cargo. The district did not err in refusing Yukon's request for co-salvor status.

AFFIRMED.

---

16. 883 F.Supp. 1343, 1362 (N.D.Cal.1995).

17. The term "Finder" as used in salvage cases does not necessarily mean that title to the vessel is abandoned and therefore subject to the law of finds. The exclusive rights to salvage a vessel may be awarded to the first to discover the location of a lost ship wreck even if the title to the wreck is still vested in the original owner.

18. 20 F. Cas. 120 (D.Mass.1862).

19. 695 F.2d 893, 901 (5th Cir.1983).